UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANE K. GODFREY,<br><br>    Plaintiff,<br><br>v.<br><br>SACRAMENTO COUNTY SHERIFF'S DEPARTMENT, et al.<br><br>    Defendants. | No. 2:19-cv-0861-TLN-KJN PS<br><br>FINDINGS AND RECOMMENDATIONS AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS AND PLAINTIFF'S MOTION FOR SANCTIONS<br><br>(ECF Nos. 17, 18, 19.) |

Plaintiff Diane K. Godfrey, who proceeds in this action without counsel but who is an attorney in good standing with the California bar, brings an action for retaliation, abatement of nuisance, and invasion of privacy against Defendants Sacramento County Sheriff's Department, Sheriff Scott Jones, Deputy Spencer J. Wright, the County of Sacramento, the Federal Bureau of Investigation, FBI Director Christopher Wray, and Doe Defendants. (ECF No. 1.) Plaintiff maintains that for many months, agents of the Sheriff's Department made nightly visits to her apartment, trespassed on her property, made loud noises, knocked on her front and back door, dressed in costume to frighten her, used an "x–ray flashlight" to spy on her while she slept, projected Halloween–type imagery on her walls and ceiling, and created a "virtual window" in her ceiling to take a picture of her while she slept. (See Id.) Defendants moved to dismiss for failing to allege plausible or substantial claims. (ECF Nos. 17, 19.) Plaintiff moved for sanctions and filed a purported "First Amended Complaint." (ECF Nos. 18, 23.) For the reasons stated

below, the Court recommends dismissal without leave to amend.

**Background**[1]

Plaintiff states that in 2005 she reported an "ongoing criminal conspiracy against her" to the U.S. Attorney's office, who in turn referred her report to the FBI. (ECF No. 1 at ¶ 13.) She then alleges Defendants took the following actions:

> Commencing on or about July 7, 2018, until on or about October 9, 201[8], an intruder or intruders began trespassing upon plaintiff's property at night, specifically in the back of plaintiff's apartment, on a patio/yard, frightening plaintiff by disturbing the peace by making noise in both the front and the back of the property, including repeated knocking and banging on plaintiff's front door and bedroom window. These individuals further intruded upon plaintiff's property at night by using an "x-ray flashlight", a device which pierces or "cuts through" intervening walls, floors, ceilings, windows, blinds, and curtains, and which focuses on the target, in this instance plaintiff, to watch and spy upon plaintiff in the privacy of her bedroom during nighttime hours, frightening plaintiff, invading plaintiff's privacy, and disrupting her sleep. (Plaintiff does not know what defendants herein call the "x-ray flashlight device", to which plaintiff refers, and plaintiff describes the device by function.) (Id. at ¶ 14.)

She alleges she reported these incidents to the FBI and Sacramento County Sheriff's Department, who, as part of the 2005 criminal conspiracy, attempted to have her murdered. (Id. at ¶¶ 16, 17.) Plaintiff alleges she reported this "murder for hire" to the FBI and the Sheriff's Department and requested "that security guards be provided to her" because of this incident. (Id. at ¶¶ 17–18.) Plaintiff alleges the Sheriff's Department did in fact provide her with security, and alleges that individual officers took the following actions:

> Beginning in or about January 1, 2019, and continuing, defendant [officers] . . . have repeatedly used an "x-ray flashlight" . . . to peer into plaintiff's bedroom from outside her apartment, from her patio/yard, and from the roof over plaintiff's apartment, at all hours of the night, scanning and surveilling her bedroom, and to peer at and surveil plaintiff while in her bed at night, struggling to sleep. [O]n their nightly visits to plaintiff's property, [the officers] repeatedly knocked, pounded, and banged on plaintiff's front door during the nighttime hours . . . and through the use of the x-ray flashlight, have repeatedly subjected plaintiff to projected images on the walls or ceilings of plaintiff's bedroom during nighttime hours, including, but not limited to, animated images of Halloween type characters, and themselves wore costumes with masks; these included a death mask, a pig costume together with a pig mask; Kentucky Fried Chicken mask; and

---

[1] These facts derive from the complaint. (See ECF No. 1.)

repeated use of a pumpkinhead mask. (Id. at ¶¶ 20–22, 64.)

Plaintiff alleges Deputy Wright has directed these incidents or personally participated in them, specifically by "pound[ing] on plaintiff's front door for four hours," and on one occasion by creating a "virtual window" in the ceiling of plaintiff's bedroom with the "x-ray flashlight", "revealing himself on her ceiling in an angel's costume but with fangs"—where he took an unauthorized photograph of plaintiff while in her bed. (Id. at ¶¶ 23, 43–44.) Plaintiff also alleges that the Sheriff's Department hired a private firm to provide additional security services, and that on separate days in February 2019, the following occurred:

> [F]our (4) DOE SECURITY FIRM male employees appeared on plaintiff's bedroom ceiling, creating a virtual window in the ceiling through the use of an "x-ray flashlight." These individuals wore costumes and peered into plaintiff's bedroom, treating plaintiff's presence as a "peep show." They also repeatedly knocked loudly on plaintiff's front door, despite a notice left on the door by plaintiff, requesting "no knocking." On another night, two male costumed employees of DOE SECURITY FIRM again appeared on plaintiff's ceiling, using an "x-ray flashlight" to create a window into plaintiff's bedroom. These two men stared at plaintiff while in her bed, passing a pair of binoculars between them.
> (Id. at ¶¶ 34–35.)

Plaintiff seeks an injunction to halt the security detail, loud noises, and use of the x–ray flashlight at her apartment; she also seeks nominal damages.

**Procedural Posture and Parties' Arguments**

On June 21, County Defendants moved to dismiss under Rule 12(b)(6), asserting Plaintiff failed to allege plausible facts sufficient to state a claim. (ECF No. 17–1.) On July 23, FBI Defendants moved to dismiss under Rule 12(b)(1), contending that the Court lacks jurisdiction to entertain 'wholly insubstantial' and 'obviously frivolous' claims, as well as that Plaintiff has not exhausted any tort claims under the Federal Tort Claims Act. (ECF No. 19–1.)

Plaintiff filed a motion for sanctions against County Defendants, asserting they fraudulently misrepresented her Complaint in their motion to dismiss by construing it as one that has "no basis in reality." (ECF No. 18.) Plaintiff argues Defendants have admitted the facts of her Complaint by "adoptive admission," and so are merely attempting to harass her because she has sued them. (Id.) Defendants opposed, stating their motion to dismiss merely asserted the basis for their argument under Rule 12(b)(6). (ECF No. 21.) Additionally, on August 1, Plaintiff

3

filed a document entitled "First Amended Complaint." (ECF No. 23.)

**Legal Standard**

Under Rule 12(b)(6), a claim may be dismissed where the complaint lacks either a cognizable legal theory or "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). Under this Rule, the court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke v. Williams, 490 U.S. 319, 327 (1989).

More importantly, a federal court has an independent duty to assess whether federal subject matter jurisdiction exists, whether or not the parties raise the issue. See United Investors Life Ins. Co. v. Waddell & Reed Inc., 360 F.3d 960, 967 (9th Cir. 2004). The court must sua sponte dismiss the case if, at any time, it determines that it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3). A federal district court generally has original jurisdiction over a civil action when: (1) a federal question is presented in an action "arising under the Constitution, laws, or treaties of the United States," or (2) there is complete diversity of citizenship and the amount in controversy exceeds $75,000. See 28 U.S.C. §§ 1331, 1332(a).

If a motion to dismiss is granted, the district court should grant leave to amend—even if no request to amend the pleading was made—unless amendment "would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities." Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016). Courts may not incorporate allegations raised in opposition papers into a complaint, but may consider them in deciding whether to grant leave to amend. See, e.g., Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

The court must construe pro se pleadings liberally, and upon dismissal must tell a plaintiff of deficiencies in the complaint and provide an opportunity to cure them if it appears at all possible the plaintiff can correct the defects. See Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); see also Hebbe v. Pliler, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (stating that courts continue to construe pro se filings liberally even when evaluating them under the standard announced in Iqbal). Nevertheless, leave to amend need not be granted when further

amendment would be futile. See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 339 (9th Cir. 1996).

**Analysis**

"Under the substantiality doctrine, the district court lacks subject matter jurisdiction when the question presented is too insubstantial to consider." Cook v. Peter Kiewit Sons Co., 775 F.2d 1030, 1035 (9th Cir. 1985) (citing Hagans v. Lavine, 415 U.S. 528, 536–39 (1974)). "The claim must be 'so insubstantial, implausible, foreclosed by prior decisions of this Court or otherwise completely devoid of merit as not to involve a federal controversy within the jurisdiction of the District Court, whatever may be the ultimate resolution of the federal issues on the merits.'" Id. (quoting Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 666 (1974)); see also Apple v. Glenn, 183 F.3d 477, 479 (6th Cir. 1999) ("[A] district court may, at any time, sua sponte dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion.").

Here, the thrust of Plaintiff's Complaint is that for many months, agents of the Sheriff's Department violated her constitutional and state law rights when they made nightly visits to her apartment, trespassed on her property, made loud noises, knocked on her front and back door, dressed in costume to frighten her, used an "x–ray flashlight" to spy on her while she slept, projected Halloween–type imagery on her walls and ceiling, and created a "virtual window" in her ceiling to take a picture of her while she slept. (See ECF No. 1.) The Court finds that the allegations of Plaintiff's Complaint, as outlined above, are implausible, devoid of merit, and unsubstantial. Cook, 775 F.2d at 1035; Hagans, 415 U.S. at 536–39; Oneida Indian Nation, 414 U.S. at 666. While the Court is sympathetic to Plaintiff's plight, such allegations simply lack an arguable basis in fact to satisfy federal jurisdiction standards. See Neitzke, 490 U.S. at 325.

At the hearing, the Court questioned Plaintiff regarding the nature of her claims and provided Plaintiff with a further opportunity to better articulate them— especially in light of Plaintiff's pro se status and her membership with the California bar. However, Plaintiff simply made additional implausible allegations regarding her perception of the various officers' conduct.

The Court questioned the extent to which Plaintiff conducted a reasonable inquiry into the facts, but Plaintiff stated she had no proof of these occurrences aside from her own testimony, including no neighbors saw or heard any of these alleged events, and plaintiff and had not contacted an expert witness to opine on the existence of the "x–ray flashlight."

The Court concludes that this action should be dismissed for lack of subject matter jurisdiction pursuant to the substantiality doctrine. Further, FBI Defendants have also submitted a motion to dismiss, which is scheduled for a future hearing date. However, this motion to dismiss is based on the same facts and arguments, and so the Court takes up this separate motion to dismiss concurrent with County Defendants' motion and dismisses for the same reasons. See Silverton v. Dep't of Treasury, 644 F.2d 1341, 1345 (9th Cir. 1981) (allowing for dismissal of non–moving defendants "where such defendants are in a position similar to that of moving defendants or where claims against such defendants are integrally related.").

**Motion for Sanctions**

Plaintiff filed a motion for sanctions, contending that in the motions to dismiss, Defendants unfairly conflated and fraudulently misrepresented her Complaint by construing it as one that has "no basis in reality." (ECF No. 18.) However, the Court reads Defendants' motions to dismiss as assertions of their position under the substantiality and plausibility doctrines. Therefore, Plaintiff's motion for sanctions is denied.

**Leave to Amend**

The Court has considered whether to allow amendment in light of the recommendation to dismiss. The Court reviewed Plaintiff's arguments in her opposition papers, as well as the content in the purported "First Amended Complaint," and finds the information she provides fails to cure the defects under the substantiality doctrine.[2] Plaintiff addition of money damages does

---

[2] On August 1, 2019, Plaintiff filed a document entitled "First Amended Complaint," which largely reiterates the allegations made in the original Complaint. (Compare ECF Nos. 1, 23.) Therein, Plaintiff changed the description of the "x–ray flashlight" to a "sense–enhancing" technology, added a prayer for money damages, and shifted around the description of some Defendants. (Id.) However, the Court observes that County Defendants' motion to dismiss was filed June 21; Plaintiff did not obtain written agreement from them to file an amended complaint, nor did she seek leave from the Court to do so. See Rule 15(a) (which allows a plaintiff 21 days

not alter the Court's recommendation, nor does Plaintiff's dropping of Doe Defendants. Critically, Plaintiff's renaming of the "x–ray flashlight" to a "sense enhancing technology" does not change the Court's analysis, since the rest of this "First Amended Complaint" merely reasserts her fantastical claims regarding the nightly disturbances by the Sheriff's department, Officers dressed in Halloween costumes, creating a virtual window in her ceiling, etc. (See ECF No. 23.)

Because the record here shows that Plaintiff would be unable to cure the above-mentioned deficiencies through further amendment, leave to amend would be futile. Cahill, 80 F.3d at 339 (leave to amend need not be granted when further amendment would be futile); Broam, 320 F.3d at 1023 (courts may consider allegations raised in opposition papers into a complaint deciding whether to grant leave to amend).

## **ORDER and FINDINGS AND RECOMMENDATIONS**

Accordingly, IT IS HEREBY ORDERED that Plaintiff's motion for sanctions (ECF No. 18) is DENIED.

Further, IT IS RECOMMENDED that:

1. Defendants' motions to dismiss (ECF Nos. 17, 19) be GRANTED;

2. The action be DISMISSED WITH PREJUDICE; and

3. The Clerk of Court be directed to CLOSE this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th

---

after service of a Rule 12(b) motion to amend, but afterwards may amend "only with the opposing party's written consent or the court's leave.").

Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED AND RECOMMENDED.

Dated: August 9, 2019

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

godf.861